# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| MICHELLE MACDONALD SHIMOTA, and THOMAS G. SHIMOTA, | Case No. 15-1590 (JRT/FLN) |
| | |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS** |
| v. | |
| BOB WEGNER, CHRISTOPHER MELTON, TIMOTHY GONDER, JON NAPPER, DANIEL FLUEGEL, FLUEGEL LAW FIRM, P.A., and DAKOTA COUNTY, | |
| Defendants. | |

Stephen V. Grigsby, **ATTORNEY AT** LAW, 5901 12th Avenue South, Minneapolis, MN 55417, for plaintiffs.

Jeffrey A. Timmerman, Assistant County Attorney, **DAKOTA COUNTY ATTORNEY'S OFFICE,** 1560 Highway 55, Hastings, MN 55033, for defendants Bob Wegner, Christopher Melton, Timothy Gonder, Jon Napper, and Dakota County.

Peter L. Gregory, **BASSFORD REMELE, PA,** 33 South 6th Street, Suite 3800, Minneapolis, MN 55402, for defendants Daniel Fluegel and Fluegel Law Firm, P.A.

Plaintiff Michelle MacDonald Shimota[1] ("MacDonald") brings this action against

Dakota County ("the County"); individual employees of Dakota County ("County

Defendants"); and former Dakota County prosecutor Daniel Fluegel and his law firm,

---

[1] MacDonald's husband, Thomas G. Shimota, is also a named plaintiff, but alleges only a loss of consortium claim derivative of MacDonald's claims. (*See* Am. Compl. ("Compl.") ¶¶ 211-22, 357-58, May 5, 2015, Docket No. 20.)

Fluegel Law Firm P.A. (collectively referred to as "Fluegel"[2]).  MacDonald's allegations stem from her arrest and detention in Dakota County in September 2013.  MacDonald brings 22 counts, alleging violations of her rights under the First, Fourth, and Fourteenth Amendments; corresponding state tort causes of action; and various state law claims.

The County and County Defendants have filed a joint motion to dismiss all but MacDonald's theft claim for failure to state a claim.  Fluegel also moves for dismissal of all of MacDonald's claims.  The Court will grant Fluegel's motion, and dismiss all claims against him based on absolute and qualified immunity.  The Court will grant in part the County and County Defendants' motion to dismiss based on qualified immunity, but will deny the motion with respect to MacDonald's conditions-of-confinement claim and her Fourth Amendment claim for the search of her camera against the County Defendants' in their personal capacities.  The Court will also deny the motion with regard to MacDonald's state respondeat superior claim to the extent it is based on her theft claim not included in this motion.  Finally, the Court will deny MacDonald's motion to strike the County Defendants' exhibits and portions of their argument relying on those exhibits.

---

[2] MacDonald mentions both Fluegel and Fluegel Law Firm P.A. in her complaint, but does not make a distinction between them; rather, she makes allegations against both collectively; therefore, the Court will address them together.  (Compl. ¶ 10.)

**BACKGROUND**

I.    **FACTUAL BACKGROUND**

A.    **MacDonald's Arrest**

In MacDonald's 66-page amended complaint, she alleges the following facts. (Am. Compl. ("Compl."), May 5, 2015, Docket No. 20.)  MacDonald alleges that she had filed many complaints against a state court judge, David Knutson, including a federal class action.  (*Id.* ¶ 18.)  On September 11, 2013, MacDonald attended the first day of a trial before Judge Knutson and requested that he recuse himself from the case.  (*Id.* ¶ 19.) MacDonald alleges that the court administrator incorrectly informed the media and the public that the second day of trial was cancelled.  (*Id.* ¶ 21.)  On September 12, 2013, MacDonald appeared for the second day of trial, and took pictures outside of the courtroom of the paper copy of the daily docket and the daily docket monitor, which reflected that trial would continue as scheduled.  (*Id.* ¶ 23.)  Inside the courtroom, but before Judge Knutson took the bench, MacDonald also photographed County Defendant Timothy Gonder, who she says was posing, smiling, and waving at the camera.  (*Id.* ¶ 25.)

MacDonald alleges that the County Defendants then seized and searched MacDonald's camera without a warrant.  (*Id.* ¶¶ 33-35.)  During the morning break, the County Defendants approached MacDonald and removed her to a holding area near the courtroom.  (*Id.* ¶¶ 36-37.)  The County Defendants allegedly taunted MacDonald while she was in the holding area.  (*Id.* ¶ 44.)  They placed MacDonald in a solitary cell, and when she cried and asked to make a phone call, they taunted her, calling her tears

"crocodile tears." (*Id.* ¶¶ 44-45.)  MacDonald alleges that the County Defendants "took their first opportunity to handle [her] body and personal property," and that they made her feel uncomfortable by removing "her hairpiece, shoes, eye glasses, and jewelry." (*Id.* ¶¶ 49-50.)  MacDonald alleges that the County Defendants handcuffed and jailed her without reading her Miranda Rights.  (*Id.* ¶¶ 54-55.)  Judge Knutson ordered that the officers return MacDonald to the courtroom, and they forced her into a wheelchair, fitted her with a belt around her waist, and handcuffed her to the belt.  (*Id.* ¶¶ 57-58.)  County Defendants wheeled her into the courtroom, where she found that her personal belongings and her client files were missing.  (*Id.* ¶¶ 59, 63.)  MacDonald alleges that Judge Knutson demanded that she either enter a default in her client's case or complete the trial, even though she did not have her files, glasses, and other belongings.  (*Id.* ¶ 65.)  During the court's lunch break, the County Defendants wheeled MacDonald into a jail cell, still handcuffed, and they "callously threw a lunch bag at her."  (*Id.* ¶¶ 69, 71.)  County Defendants then wheeled MacDonald back into the courtroom, where she continued with the trial while a County Defendant "stood immediately behind her with a gun."  (*Id.* ¶¶ 72-73.)  Judge Knutson ruled against MacDonald's client in the trial, and allegedly complained to the Minnesota Board of Professional Responsibility for Lawyers about MacDonald's ineffective counsel for her client in the case.  (*Id.* ¶ 76.)

### B.    Post-Trial Detention

After the trial, MacDonald alleges that the County Defendants continued to detain her through the night and into the following day without seeking a warrant. (*Id.* ¶¶ 79-82.)  MacDonald was held for more than 24 hours without being booked, charged, or

allowed bail, bond, or to make a phone call.  (*Id.* ¶¶ 84, 89, 90, 102.)  MacDonald alleges that during her detention, the County Defendants were in contact with and received advice from Fluegel.  (*Id.* ¶¶ 91, 133-34.)  The County Defendants told her that she could not make a phone call until she was "booked," but they never booked her.  (*Id.* ¶¶ 106-07.)

MacDonald alleges that the County Defendants engaged in "constant menacing and torturous behaviors" during her detention.  (*Id.* ¶ 118.)  MacDonald was wheeled to an adjacent jail where she alleges that three male County Defendants hovered near her in an elevator while she was seated.  (*Id.* ¶ 86.)  She also alleges that many male County Defendants "handled her throughout" the time she was detained.  (*Id.* ¶¶ 86, 102.)  The County Defendants took pictures of her and two of them "improperly handle[d]" her and referred to her as "beautiful."  (*Id.* ¶ 104.)  During her detention, she was held in a solitary cell at the County's male facility.  (*Id.* ¶ 99.)  MacDonald's cell had a small curtain opening where County Defendants could watch her throughout the night, including when she went to the bathroom.  (*Id.* ¶ 110.)

MacDonald alleges that County Defendant Gonder removed the mattress, pillow, and toilet paper from her cell.  (*Id.* ¶¶ 100, 108.)  Gonder also rattled his keys just outside of the cell door and entered the cell throughout the night, which kept her from sleeping and caused her to fear physical violence or rape.  (*Id.* ¶ 119.)  The County Defendants "purposely kept the temperature in her cell extremely low" and kept "bright lights on all night to keep her awake."  (*Id.* ¶¶ 108, 122.)  The cell was "near freezing" and, without a mattress, MacDonald felt like she was sleeping "on an ice block in a freezer all night."

(*Id.* ¶ 101.)  The County Defendants taunted her by showing her blankets, but saying that she could not have them.  (*Id.* ¶ 121.)  In order to further "traumatize" MacDonald, County Defendants told her that others in the jail were attempting to commit suicide and that they had found a dead prisoner.  (*Id.* ¶ 113.)  Another male County Defendant "threatened to strip [her] naked and put her in a straight-jacket and padded cell."  (*Id.* ¶ 114.)  MacDonald alleges that these tactics reflect seven of the eleven recognized forms of torture, including: sexual humiliation, sleep deprivation, sensory deprivation, solitary confinement/isolation, temperature extremes, sensory bombardment, and psychological techniques.  (*Id.* ¶ 123.)  MacDonald alleges that she made suicidal statements during her detention, hoping that her treatment would stop, and also that "she offered to 'confess' to unknown charges in order to be released."  (*Id.* ¶ 124.)  MacDonald alleges that she soiled herself due to the lack of toilet paper and her fear of using the toilet while the County Defendants were watching.  (*Id.* ¶ 116.)  MacDonald found the experience "traumatic, terrifying and permanently life altering" because she had never before been incarcerated.  (*Id.* ¶ 111.)

### C.    MacDonald's September 13th Court Appearance and Release

In the late afternoon of the next day, September 13, 2013, MacDonald was taken before Dakota County Judge Tim Wermager, still in a wheelchair and handcuffed.  (*Id.* ¶¶ 127-28.)  MacDonald alleges that she told Judge Wermager about her ordeal, and he

signed her release order immediately.[3]  (*Id.* ¶¶ 128-29.)  However, the County Defendants did not immediately release her.  (*Id.* ¶ 130.)  They told her that she must return to be booked.  (*Id.* ¶¶ 131-32.)  When she refused, Fluegel stated that he "would bring a motion to circumvent the release order unless she was booked."  (*Id.* ¶ 132.)  The County Defendants then threatened to keep her in jail for an additional 30 days, and forcibly returned her to her cell.  (*Id.* ¶ 137.)  Finally, a security officer retrieved MacDonald and escorted her to get her things and leave.  (*Id.* ¶¶ 139-40.)  When MacDonald looked through her property bag from the jail, she found a citation for contempt, but her camera and diamond necklace were missing.  (*Id.* ¶¶ 142-44.)

### D.   MacDonald's Criminal Contempt Case

Fluegel, acting on behalf of the County, brought a misdemeanor charge of criminal contempt of court against MacDonald, asserting that she "willfully disobeyed a lawful process or other mandate of the court by taking a photograph within a courtroom . . . as prohibited by the Minnesota General Rules of Practice."  (*Id.* ¶¶ 149-50.)  MacDonald challenged her arrest, and Dakota County Judge Leslie M. Metzen found that her arrest was supported by probable cause.[4]  (*See* Aff. of Jeffrey A. Timmerman ("Timmerman Aff."), Ex. 2, May 5, 2015, Docket No. 25.)  Judge Metzen later found that the evidence

---

[3] This is how MacDonald phrases it in her complaint.  Fluegel provided the Court with the release order, which states that MacDonald was released with the condition that she did "not have to go through booking, unless the state files a motion to do so."  (Decl. of Peter L. Gregory ("Gregory Decl."), Ex. 1, June 29, 2015, Docket No. 51.)

[4] This decision was not referenced in MacDonald's complaint.  However, the order is subject to judicial notice as discussed below.

from MacDonald's camera was inadmissible because it was obtained without a warrant. (*Id.*, Ex. 3; Compl. ¶ 161.)  Judge Metzen also found that MacDonald's detention violated Minnesota Rule of Criminal Procedure 6.01, but concluded that the violation was justified by MacDonald's actions.  (Timmerman Aff., Ex. 3; Compl. ¶ 162.)

MacDonald alleges that the County typically keeps written inventory of items confiscated from detained individuals, but that no written inventory was taken for her items, and that the County never returned her necklace.  (*Id.* ¶¶ 51-53.)  MacDonald alleges that she has suffered actual damages, including the loss of her necklace, attorney fees, missed work, and damage to her law business. (*Id.* ¶¶ 177-93.)  MacDonald also alleges mental and physical damages, including "posttraumatic stress, weight loss, anxiety, depression and insomnia," as well as damage to her reputation.  (*Id.* ¶¶ 194, 196-210.)  Lastly, MacDonald alleges damage to her husband, Thomas Shimota, including stress, depression, anxiety, changes in lifestyle, and loss of consortium.  (*Id.* ¶¶ 211-222.)

## II.    MACDONALD'S CLAIMS

MacDonald filed this action on March 25, 2015, and filed her amended complaint on May 5, 2015.  MacDonald alleges claims against the County; individual officers and employees of the County, both named[5] and represented as John and Jane Doe[6]; and

---

[5] The named County defendants include Bob Wegner, Christopher Melton, Timothy Gonder, and Jon Napper.  (Compl. ¶ 2.)

[6] John and Jane Doe represent unknown and unidentified persons believed to be members of the Dakota County Sheriff's Office.  (Compl. ¶ 2.)  MacDonald alleges many of her claims generically against "Dakota County Individual Defendants," in which she includes John and Jane Does.  (*See id.* ¶ 8.)  She argues that these claims cannot be dismissed because they are not

(Footnote continued on next page.)

Fluegel and his law firm.  All claims involving County Defendants are alleged in both their individual and official capacities.  (*Id.* ¶ 9.)  MacDonald alleges federal § 1983 claims based on violations of her First, Fourth, and Fourteenth Amendment rights, including false arrest, false imprisonment, malicious prosecution, retaliatory prosecution, and their state-law counterparts.  She also alleges conspiracy claims under §§ 1983, 1985, and 1986.  She additionally alleges *Monell*, failure to intercede, and supervisory liability against the County.  Finally, she alleges several other state law tort claims.

County Defendants filed a motion to dismiss on May 5, 2015, and Fluegel filed a motion to dismiss on May 18, 2015.  Also pending before the Court is MacDonald's motion to strike the County Defendants' attachments, which she filed on May 12, 2015.

## DISCUSSION

### I.   STANDARD OF REVIEW

In reviewing a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face."  *See, e.g.*, *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  To survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

_____

(Footnote continued.)

named and cannot yet be represented by counsel; however, the Court notes that any Does are similarly County employees, and the same reasoning would apply to them.

Although the Court accepts the complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility," and therefore must be dismissed. *Id.* (internal quotation marks omitted). Rule 12(b)(6) also authorizes the Court to dismiss a claim on the basis of a dispositive legal issue. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

## II.     MOTION TO STRIKE

MacDonald moves the Court to strike the County Defendants' exhibits and portions of their arguments relying on those exhibits because they were not included in her complaint. The first exhibit is a state court order, entitled "Order Regarding Cameras and Other Recording Equipment in Court Facilities," dated July 1, 2005, and referred to as the Macklin Order. (Timmerman Aff., Ex. 1.) The second exhibit is Judge Metzen's January 22, 2014, order finding probable cause for MacDonald's citation. (*Id.*, Ex. 2.) The third exhibit is Judge Metzen's February 28, 2014, order suppressing the evidence obtained from MacDonald's camera. (*Id.*, Ex. 3.)

The Court will deny MacDonald's motion to strike these exhibits because the Court "may take judicial notice of other judicial opinions." *Kent v. United of Omaha Life Ins. Co.*, 484 F.3d 988, 994 n.2 (8th Cir. 2007). However, while the Court takes judicial

notice of the state court decisions, it will not take judicial notice of the facts as described in the decisions.  *See McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 914 (8th Cir. 2014) ("Judicial notice of another court's opinion takes notice of the existence of the opinion, which is not subject to reasonable dispute over its authenticity, but not of the facts summarized in the opinion." (internal quotation marks omitted)).  Accordingly, the Court will deny MacDonald's motion to strike.

## III.    PROBABLE CAUSE

First, many of MacDonald's claims can be defeated by the existence of probable cause or arguable probable cause for her arrest.  MacDonald's Fourth Amendment false arrest and false imprisonment claims, found in Count 6, and her malicious prosecution claim, found in Count 11, fail if probable cause is established.[7]  *See, e.g.*, *Kurtz v. City of Shrewsburg, Mo.*, 245 F.3d 753, 758 (8th Cir. 2001) ("[A] false arrest claim under § 1983 fails as a matter of law where the officer had probable cause to make the arrest.").

Additionally, MacDonald's related state law claims, including false arrest, found in Count 15; false imprisonment, found in Count 16; and malicious prosecution, found in

---

[7] County Defendants point out that false imprisonment claims are generally found in state tort law, but that some "courts have entertained § 1983 claims for false imprisonment when a plaintiff alleges the denial of constitutional rights."  *Snyder v. Snyder*, No. 063072, 2007 WL 894415, at *9 (D. Minn. Mar. 21, 2007).  "However, where a [§ 1983] claim for false arrest is barred because officers acted with probable cause, 'no false imprisonment claims lies.'"  *Id.* (quoting *Anderson v. Franklin Cty., Mo.*, 192 F.3d 1125, 1132 (8th Cir. 1999)).  County Defendants also suggest that malicious prosecution generally is not actionable under § 1983, *see Kurtz*, 245 F.3d at 758, but that to the extent that it is actionable, it is defeated by the existence of probable cause.  *See Harrington v. City of Council Bluffs*, 678 F.3d 676, 679 (8th Cir. 2012).  Thus, to the extent that these causes of action are available, the Court finds that they are defeated by probable cause.

Count 19, also require the plaintiff to show a lack of probable cause under Minnesota law. *See Sherbrooke v. City of Pelican Rapids*, 577 F.3d 984, 987 (8th Cir. 2009) (finding that false arrest and malicious prosecution claims require a lack of probable cause); *Kelly v. City of St. Paul*, No. 09-461, 2010 WL 4272460, at *11 (D. Minn. Oct. 18, 2010) (finding that false imprisonment claims require a lack of probable cause).

Finally, a finding of probable cause would also bar MacDonald's First Amendment retaliatory prosecution claim, found in Count 12. *See Williams v. City of Carl Junction*, 480 F.3d 871, 875 (8th Cir. 2007) (finding that a § 1983 claim for retaliatory prosecution requires a plaintiff to "plead and prove a lack of probable cause for the underlying charge"); *Greenman v. Jessen*, No. 13-2139, 2014 WL 1230065, at *6 (D. Minn. Mar. 25, 2014) (dismissing plaintiff's First Amendment retaliation claim because the officers had arguable probable cause).

The plaintiff bears the burden of proof to show that she was arrested without probable cause in a Section 1983 action. *See Der v. Connolly*, 666 F.3d 1120, 1127-28 (8th Cir. 2012). "Probable cause exists when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Greenman v. Jessen*, 787 F.3d 882, 888 (8th Cir. 2015) (citing *Peterson v. Kopp*, 754 F.3d 594, 598 (8th Cir. 2014)). An officer "need only have 'arguable probable cause' to make the arrest in order to receive qualified immunity." *Id.* (citing *Kopp*, 754 F.3d at 598). Courts have dismissed similar claims at the motion to dismiss stage where the factual circumstances described in the complaint

"gave rise to arguable probable cause for [the plaintiff's] arrest." *Ulrich v. Pope Cty.*, 715 F.3d 1054, 1060 (8th Cir. 2013).

The County Defendants rely on a number of sources suggesting that there was probable cause to arrest MacDonald. First, the Macklin Order provides that "[n]o pictures or voice recordings, except the recordings made as the official court record, shall be taken in any courtroom or area of the Judicial Center where courtrooms are located." (Timmerman Aff., Ex. 1.) Also, the state criminal contempt provision states that "willful disobedience to the lawful process or other mandate of a court" is a misdemeanor. Minn. Stat. § 588.20, subd. 2(4). Finally, under Minnesota General Rule of Practice 4.01, "no pictures or voice recordings, except the recording made as the official court record, shall be taken in any courtroom, area of a courthouse where courtrooms are located . . . during a trial or hearing of any case or special proceeding incident to a trial or hearing, or in connection with any grand jury proceedings." Judge Metzen cited all three of these provisions in her order finding probable cause. (Timmerman Aff., Ex. 2.)

MacDonald admits that she took the photograph of Defendant Gonder in the courtroom. Thus, the pertinent question is whether it was objectively reasonable for the officers to believe that probable cause for arrest existed based on that action. MacDonald contends that the County had no cause to arrest her based on Rule 4.01 because violating a civil practice rule is not a crime and because the rule only prohibited photographs in a

courtroom "during a trial or hearing" and she took the picture before the hearing began.[8]

(Compl. ¶¶ 25-29, 32.)   However, the Court finds that accepting the facts pleaded by

MacDonald as true and considering the above-described authority, the County

Defendants had at least arguable probable cause for their actions sufficient to trigger

qualified immunity.[9]   While "the probable-cause standard allows room for reasonable

mistakes by a reasonable person, the qualified-immunity standard 'protect[s] all but the

plainly incompetent or those who knowingly violate the law.'"   *Greenman*, 787 F.3d at

888 (brackets in original) (citing *Ulrich*, 715 F.3d at 1059).   Based on the Macklin Order

and Rule 4.01, the Court finds no plain incompetence or knowing violation of the law by

the County Defendants.

---

[8] At the hearing on this motion, MacDonald also argued that the Macklin Order did not support her arrest because the state court judge lacked authority to issue such an order. However, even if the Court accepted this reading of the judge's authority, it would not change the outcome of this case.  The officers involved could not be expected to know whether or not a judge had authority to issue an order, and therefore, it does not affect the Court's finding that there was arguable probable cause for arrest.

[9] MacDonald also argues that her warrantless arrest was improper due to Minnesota Rule of Criminal Procedure 6.01, subdivision 1(a), which provides that an officer should issue a citation rather than performing an arrest unless the person is likely to cause bodily injury to themselves, commit other criminal conduct, or not respond to the citation.  However, this Court rejected a similar argument in *Gilmore v. City of Minneapolis*.  No. 13-1019, 2015 WL 1189832, at *14 n.14 (D. Minn. Mar. 16, 2015) ("[T]o the extent [plaintiff] relies on Minnesota Rule of Criminal Procedure 6.01, subd. 1(a), which requires an officer arresting someone for a misdemeanor without a warrant to issue a citation and release the person, unless certain conditions are met, that rule is also immaterial to the Fourth Amendment analysis." (citing *Adewale v. Whalen*, 21 F. Supp. 2d 1006, 1015 (D. Minn. 1998))).  In *Adewale*, the Court found that "[t]he procedure described in Minn. R. Civ. P. 6.01 is not a federal right actionable under § 1983."  21 F. Supp. 2d at 1015.

Accordingly, the Court will dismiss all of MacDonald's claims that rest on the lack of probable cause, including her federal and state claims based on false arrest, false imprisonment, malicious prosecution, and First Amendment retaliatory prosecution.

## IV.    FOURTH AMENDMENT SEARCH AND SEIZURE

In response to the present motion, MacDonald argues that she also alleged claims based on the warrantless search and seizure of her camera.  This claim is found, if at all, in MacDonald's catch-all Count 1.  (Compl. ¶ 225.)  As admitted by MacDonald's counsel at the motion hearing, all of MacDonald's damages stem from her arrest and detention, not from the search and seizure of her camera; accordingly, the County Defendants argue that this claim fails for want of damages.  However, the County Defendants have not provided sufficient case support for a finding that the lack of actual damages results in dismissal of this claim.  Instead, the cases cited by County Defendants only show that a plaintiff's compensatory damages must be based on his or her actual injury.  *See Townes v. City of New York*, 176 F.3d 138, 148 (2d Cir. 1999) (finding plaintiff could not recover damages for his subsequent conviction and incarceration based on an unreasonable search and seizure); *Silver v. D.C. Metro. Police Dep't*, 939 F. Supp. 2d 20, 22-23 (D.D.C. 2013) (finding plaintiff's "stress, trouble, and pain" due to his arrest after discovery of illegal drugs were not compensable under § 1983 Fourth Amendment claim).  Here, MacDonald admits that her emotional distress and other damages alleged do not derive from the search and seizure of her camera.  But, MacDonald may still be able to pursue these claims and seek nominal damages.  *DePugh v. Penning*, 888 F. Supp. 959, 981 (8th Cir. 1995) (finding that even if plaintiff "can show

no actual damages as a result of a search and seizure violative of the Fourth Amendment . . . he is entitled to pursue his cause of action pursuant to § 1983 and, if a violation is shown, to obtain at least nominal damages and possibly punitive damages"); *Hunter v. Auger*, 672 F.2d 668, 677 (8th Cir. 1982) (allowing nominal damages for Fourth Amendment claim). Accordingly, the Court will not dismiss MacDonald's claims for search and seizure of her camera based on a lack of actual damages.

At the hearing on this motion, the County Defendants also argued that MacDonald's search and seizure claim fails because exigent circumstances justified the search and seizure of her camera, and she did not have a reasonable expectation of privacy in her camera. County Defendants rely on *Berglund v. City of Maplewood*, in which the Court granted summary judgment to defendants, finding that exigent circumstances justified the warrantless seizure of a videotape, which officers believed contained evidence of criminal acts and could be tampered with unless seized. 173 F. Supp. 2d 935, 943-44 (D. Minn. 2001). The Court also found that plaintiffs had "no reasonable expectation of privacy in the videotape to the extent that it recorded communications that the officers observed." *Id.* at 944. County Defendants argue that this case is substantially similar; exigent circumstances justified the seizure of MacDonald's camera because she could delete the pictures she took in the courtroom – which were evidence of her criminal activity – and she had no reasonable expectation of privacy in the pictures in her camera to the extent that they were taken in the presence of the County Defendants.

The Court, however, finds that the facts in *Berglund* are somewhat distinct.  Here, the seizure may have been justified by exigent circumstances, based on the threat that MacDonald could destroy evidence by deleting the pictures.  However, the search was conducted in a courtroom, during regular business hours, and therefore, the County Defendants could have easily sought a warrant.  Similarly, even if MacDonald did not have a reasonable expectation of privacy in the particular picture that she took in the courtroom, the Court does not find that she categorically lacked a reasonable expectation of privacy in the contents of her digital camera.  Thus, at this stage, and with only the factual record as presented in the complaint, the Court will not dismiss MacDonald's Fourth Amendment claim for the search of her camera.[10]

## V.    EXCESSIVE FORCE

MacDonald alleges an excessive force claim against the County Defendants under the Fourth and Fourteenth Amendments in her catch-all Count 1.[11]  (Compl. ¶ 225.)  The Eighth Circuit has applied "Fourth Amendment excessive force standards to incidents occurring during the transportation, booking, and initial detention of recently arrested

---

[10] The Court notes that the survival of MacDonald's claim based on the search and seizure of her cell phone has no bearing on her arrest or the claims stemming from her arrest. The search and seizure took place after MacDonald took the picture, and therefore, the County Defendants already had arguable probable cause for her arrest.  Thus, at most, MacDonald has alleged a separate claim solely for search of her camera for nominal damages.

[11] MacDonald also alleged excessive force under the Eighth Amendment in Count 5, (Compl. ¶ 251-54); however, she acknowledged that the Eighth Amendment does not apply under the circumstances, and withdrew that claim in her response to this motion.  (Pl.'s Mem. in Opp'n at 7, June 1, 2015, Docket No. 41.)

persons." *Chambers v. Pennycook*, 641 F.3d 898, 905 (8th Cir. 2011) (citing *Wilson v. Spain*, 209 F.3d 713, 715-16 (8th Cir. 2000). Thus, courts apply a Fourth Amendment reasonableness standard, and decide "whether the amount of force used was objectively reasonable under the particular circumstances." *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009) (internal quotation mark omitted). The reasonableness is "judged from the perspective of a reasonable officer at the scene, rather than with the 20/20 vision of hindsight." *Chambers*, 641 F.3d at 906 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Generally, the degree of injury is not dispositive of an excessive force claim; however, "[t]he degree of injury is certainly relevant insofar as it tends to show the amount and type of force used." *Id.* The focus of the inquiry is "whether *the force applied* is reasonable from the perspective of a reasonable officer on the scene at the time the force is used." *Id.* (citing *Graham*, 490 U.S. at 396).

The Court finds four specific instances of force in MacDonald's complaint, including allegations that the defendants: (1) physically removed her from Judge Knutson's courtroom, (Compl. ¶¶ 37, 41); (2) removed her personal effects, (*id.* ¶ 50); (3) handcuffed her, fitted her with a restraint, and placed her in a wheelchair, (*id.* ¶¶ 54, 58); and (4) touched her while she was photographed at the jail, (*id.* ¶ 104).[12] Prior cases suggest that far more severe incidents of force were not found excessive. *See, e.g.*, *Beaulieu v. Ludeman*, 690 F.3d 1017, 1033 (8th Cir. 2012) (finding no excessive force

---

[12] MacDonald argues that these four allegations are "only four of the hundreds of facts alleged in Plaintiffs' Amended Complaint." (Pl.'s Mem. in Opp'n at 28.) However, MacDonald does not point to any other specific incidences of force that would support her excessive force claim, and the Court does not find any in her complaint.

where application of handcuffs did not result in "long-term or permanent physical injury"); *Curd v. City Court of Judsonia*, 141 F.3d 839, 841 (8th Cir. 1998) ("Even if seizing [the plaintiff's] arm and turning her body was unnecessary to effect the arrest, we cannot conclude that this limited amount of force was objectively unreasonable."). MacDonald relies on *Montoya v. City of Flandreau*, in which the court considered the fact that the plaintiff's conduct only amounted to a misdemeanor punishable by no more than thirty days and a fine in determining whether the force was reasonable.  669 F.3d 867, 871-72 (8th Cir. 2012).  However, the *Montoya* court also relied heavily on the fact that the arrest resulted in a broken leg, finding that while the degree of injury was not dispositive, it was a relevant factor.  *Id.* at 872.  Here, even though MacDonald's conduct was minor and would not justify significant force, she has not alleged any force beyond that necessary to effect the arrest, and she does not allege any resulting physical injury. Even if the alleged force was more than what was necessary to effect the arrest, it was not objectively unreasonable.  The Court will therefore dismiss MacDonald's excessive force claim.

Under Minnesota law, to state a claim for assault and battery against an on-duty officer, a plaintiff must sufficiently allege excessive force.  *See Paradise v. City of Minneapolis*, 297 N.W.2d 152, 155 (Minn. 1980).  MacDonald's assault and battery claim thus fails for the same reason as her federal excessive force claim discussed above. *See, e.g.*, *Adeogun v. City of St. Paul*, No. 12-3190, 2014 WL 47949, at *7 (D. Minn. Jan. 7, 2014).  Accordingly, the Court will also dismiss MacDonald's state assault and battery claim.

## VI. FOURTEENTH AMENDMENT CLAIMS

MacDonald alleges a number of claims under the Fourteenth Amendment in her catch-all Count 1.[13] (*See* Compl. ¶¶ 223-32.) The Court will construe this portion of MacDonald's complaint as alleging an equal protection claim and a due process claim based on her conditions of confinement. MacDonald argues that the County Defendants are singling out a few of her Fourteenth Amendment claims (specifically excessive force and discrimination), but have not considered other violations of her due process and equal protection rights, including: the First Amendment right to file federal judicial board complaints against a government official, conducting a warrantless search and seizure of her camera, refusing to return her camera, conducting a warrantless seizure of her telephone, and refusing to release her despite a release order.[14] However, claims that are based on other amendments are not analyzed under the Fourteenth Amendment; instead, they are considered under the amendment that provides the substantive right. *See*

---

[13] MacDonald also alleged a Fifth Amendment claim; however, the Fifth Amendment does not apply because Defendants are not federal actors. *States v. Greene*, 995 F.2d 793, 795 (8th Cir. 1993); *Nicolaison v. Brown*, No. 05-1255, 2007 WL 851616, at *7 (D. Minn. Feb. 6, 2007). Accordingly, the Court will dismiss her Fifth Amendment claim.

[14] A delayed-release due process claim does not specifically appear anywhere in the lengthy complaint, but was discussed in MacDonald's response. The Court finds that even if MacDonald has pleaded such a claim, it fails. The standard for a delayed-release claim is whether the post-release order detention shocks the conscience. *Lund v. Hennepin Cty.*, 427 F.3d 1123, 1127 (8th Cir. 2005). While the timeline here is not entirely clear – MacDonald alleges only that she believed a significant amount of time had passed – it appears that she was released the same day as the release order. (Compl. ¶¶ 135-40.) Such a short amount of time is insufficient to shock the conscience. *See Coleman v. Duluth Police Dep't*, No. 07-473, 2009 WL 921145, at *21 (D. Minn. Mar. 31, 2009) (describing many cases finding that delays ranging from twelve hours to six days did not shock the conscience).

*Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing' these claims." (quoting *Graham*, 490 U.S. at 395)).   Thus, the Court can discern only two potentially viable claims under the Fourteenth Amendment: one for equal protection and one for the conditions during her detainment.

### A.    Equal Protection Claim

"The Equal Protection Clause requires the government treat all similarly situated people alike." *Creason v. City of Washington*, 435 F.3d 820, 823 (8th Cir. 2006).  Thus, to state an equal protection claim, a plaintiff must establish that he or she was treated differently from others who are similarly situated "and that the different treatment [was] based upon either a suspect classification or a 'fundamental right.'" *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 815 (8th Cir. 2008).  Additionally, a plaintiff may plead a class-of-one claim where the "defendant intentionally treated [the plaintiff] differently from others who are similarly situated and . . . no rational basis existed for the difference in treatment." *Mathers v. Wright*, 636 F.3d 396, 399 (8th Cir. 2011) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562 (2000)).

MacDonald argues that she has alleged facts that she was singled out by the defendants based on her complaints against Judge Knutson.  (Compl. ¶¶ 18, 20, 62.)  "To be similarly situated for purposes of a class-of-one equal-protection claim, the persons alleged to have been treated more favorably must be identical or directly comparable to

the plaintiff in all material respects." *Robbins v. Becker*, 794 F.3d 988, 996 (8th Cir. 2015) (quoting *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010)).  For this type of claim, plaintiffs must "'provide a specific and detailed account of the nature of the preferred treatment of the favored class,' especially when the state actors exercise broad discretion to balance a number of legitimate considerations." *Id.* (quoting *Nolan v. Thompson*, 521 F.3d 983, 990 (8th Cir. 2008)).  Here, MacDonald's complaint does not discuss the contours of her equal protection claim, and certainly does not particularly describe any other individuals comparable in all material respects and their preferred treatment.

MacDonald also claims that the conditions of her detention were a product of discrimination with "gender/animus bias."  (Compl. ¶ 265.)  However, these conclusory statements and minimal factual allegations are insufficient to state an equal protection claim.   MacDonald's allegations are insufficient to suggest that she was treated differently from others similarly situated. *See Beaulieu v. Ludeman*, No. 07-1535, 2008 WL 2498241, at *12 (D. Minn. June 18, 2008) ("Absent a threshold showing that plaintiffs are similarly situated to those who allegedly receive favorable treatment, plaintiffs do not have a viable equal protection claim.").  Additionally, MacDonald has not pleaded sufficient facts to allow an inference that any dissimilar treatment was based on her gender.  *See Patel*, 515 F.3d at 816 (granting summary judgment on equal protection claim where there was insufficient evidence that the defendants "acted with a discriminatory purpose").  Overall, MacDonald has failed to push her claims across the

line from possible to plausible.  Accordingly, the Court will grant County Defendants' motion with regard to MacDonald's equal protection claims.

### B.   Conditions-of-Confinement Claim

Claims based on the conditions of confinement of a pretrial detainee are analyzed under the due process clause rather than the Eighth Amendment.  *See Bell v. Wolfish*, 441 U.S. 520, 535-40 (1979).  In *Bell*, the Supreme Court determined whether the conditions of the plaintiff's pretrial detainment amounted to punishment, and therefore violated the due process clause.  *See id.* at 535 n.16 ("Due process requires that a pretrial detainee not be punished.").  The Court found that "[a]bsent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on" whether "a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective."  *Id.* at 538-39.

The Eighth Circuit has applied this standard to pretrial detainees at least three times.  *See Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010); *Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003); *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996).  "The proper inquiry is whether [the] conditions amount to punishment of the detainee, for, under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt."  *Smith*, 87 F.3d at 268 (citing *Bell*, 441 U.S. at 535).  While the Eighth Circuit has suggested that "the burden of showing a constitutional violation is lighter for a pretrial detainee under the Fourteenth Amendment than for a post-conviction prisoner under the Eighth Amendment," it has also "repeatedly . . . applied the same 'deliberate indifference' standard as is applied to Eighth Amendment claims made by

convicted inmates." *Morris*, 601 F.3d at 809 (citations omitted).   "In considering whether the conditions of pretrial detention are unconstitutionally punitive, [the Court] review[s] the totality of the circumstances of a pretrial detainee's confinement." *Id.* at 810 (citing *Owens*, 328 F.3d at 1027).   In *Smith*, the court upheld a grant of summary judgment against the plaintiff, finding that the plaintiff's "raw sewage" allegations did not "rise to a level of constitutional significance" because while he alleged that his toilet was overflowed for four days, "the correctional officers stated by affidavit that [the plaintiff] was offered an opportunity to flush the toilet and to clean up the mess but he declined." 87 F.3d at 268.   In *Owens*, the court reversed a grant of judgment as a matter of law against the plaintiff, where the plaintiff was required to sleep very close to a toilet for five weeks.   328 F.3d at 1027.   Finally, in *Morris*, the court affirmed the denial of the defendant's motion for summary judgment where the plaintiff was forced to ride in a dog cage for 90 minutes, finding that there were alternative options and no exigent circumstances justified the conduct.   601 F.3d at 810-11.

Here, MacDonald alleges the following conditions: she was held in a "near-freezing" cell; there were bright lights throughout the night; she did not have a mattress, pillow or blanket; the guards taunted her with a blanket; she had no toilet paper; there was an opening in her cell that allowed the male guards to watch her if she went to the bathroom; the guards interrupted her throughout the night making her fearful; and the guards told her that someone else had committed suicide and that they saw a dead body. (Compl. ¶¶ 100, 101, 108-110, 113-14, 116, 119, 121-22.)   MacDonald alleges that through these actions, County Defendants "utilized at least seven of the eleven

internationally recognized forms of torture."  (*Id.* ¶ 123.)  She alleges that "at one point she indicated she was suicidal with hopes that [County Defendants] would stop causing her severe physical and mental suffering" and "she offered to 'confess' to unknown charges in order to be released."  (*Id.* ¶ 124.)  At this stage in the litigation and accepting these factual allegations as true, the Court finds that MacDonald has stated a conditions-of-confinement claim.  Viewing the totality of the circumstances, these conditions may rise to the level of being unconstitutionally punitive.  At a later stage in the litigation, once the County Defendants may offer conflicting evidence, they may be able to call into question some of these allegations or establish legitimate governmental objectives.  *See Smith*, 87 F.3d at 267-69 (upholding summary judgment where evidence suggested that plaintiff could have fixed the complained of condition).  However, at the motion-to-dismiss stage, and based on the facts as alleged, the Court finds that MacDonald has stated a viable claim.  Accordingly, the Court will deny County Defendants' motion with regard to MacDonald's conditions-of-confinement claim.

## VII.   FEDERAL CONSPIRACY CLAIMS

MacDonald alleges the following conspiracy claims:  § 1983 conspiracy in Count 4; § 1985(3) conspiracy with gender animus in Count 8; § 1985(2) conspiracy to impede justice in Count 9; and a § 1986 claim for failure to prevent a conspiracy under § 1985 in Count 3.  All of these claims require a showing "that the defendant conspired with others to deprive [the plaintiff] of constitutional rights."   *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008) (applying this standard to a § 1983 claim); *see Marti v. City of Maplewood*, 57 F.3d 680, 685 (8th Cir. 1995) (applying the same standard to a

§ 1985 claim); *Sundae v. Anderson*, No. 02-855, 2003 WL 22077742, at *6 (D. Minn. Sept. 2, 2003) (finding that a § 1986 claim is dependent on a viable § 1985 claim).  To establish a conspiracy, a plaintiff must allege "specific facts tending to show a meeting of the minds among the alleged conspirators." *Lawrence v. City of St. Paul*, 740 F. Supp. 2d 1026, 1049 (D. Minn. 2010) (internal quotation marks omitted) (quoting *Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010)).  Allegations that the parties had an "opportunity to communicate" or "acted in a manner that was consistent with the existence of a conspiracy" are insufficient alone to suggest a conspiracy.  *Id.* at 1050 (citing *Twombly*, 550 U.S. at 570).  The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and push the "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

In this case, MacDonald relies on the fact that multiple defendants were involved in her arrest and detention to establish a conspiracy claim.  MacDonald also argues that the parties explicitly worked together because the County Defendants told her that Fluegel "would bring a motion to circumvent the release order unless she was booked." (Compl. ¶ 132.)  She alleges that due to Fluegel's advice, she "remained in detention despite Judge Wermager's court order."  (*Id.* ¶ 135.)  MacDonald makes other conclusory statements about a conspiracy, such as "[i]t was part of the conspiracy that [County Defendants] did, among other acts, mentally torture [MacDonald] while she was in custody," and "[i]n furtherance of the conspiracy . . . Defendants engaged in a cover up by, among other things, continuing to withhold [MacDonald's] property (camera) and refusing to turn over the entirety of incriminating video in its possession."  (*Id.* ¶¶ 269-

70.)  Finally, MacDonald alleges that the County Defendants "conspired with each other and with [Fluegel], to undertake a course of conduct to injure, oppress, and intimidate" MacDonald.  (*Id.* ¶ 264.)

These allegations are insufficient to support a conspiracy claim.  MacDonald's allegations do not include "specific facts tending to show a meeting of the minds among the alleged conspirators."  *See Lawrence*, 740 F. Supp. 2d at 1049.  At most, the allegations suggest that the parties "acted in a manner that was consistent with the existence of a conspiracy."  *See id.* at 1050.  Additionally, "[i]t is not sufficient that the . . . [d]efendants conspired with the others to carry out [an order]; they must conspire *for the purpose* of depriving one of a constitutional right."  *Alexander v. Hedback*, No. 11-3590, 2012 WL 2004103, at *11 (D. Minn. June 5, 2012).  Thus, even if MacDonald's allegation that she was told that Fluegel would bring a motion to circumvent the release order was sufficient to show a conspiracy, it still would be insufficient to state a claim because it would relate only to MacDonald's delayed release, which was not a constitutional violation as discussed above.  Overall, the Court finds that MacDonald's allegations of a conspiracy to deprive her of her constitutional rights do not raise a right to relief above the speculative level or push her claims across the line from conceivable to plausible.  Therefore, the Court will dismiss MacDonald's conspiracy claims.

## VIII.  FEDERAL CLAIMS AGAINST THE COUNTY

MacDonald alleges a *Monell* failure to train, supervise, and discipline claim; a failure to intervene claim; and a supervisory liability claim – found in Counts 2, 7, and 10 of the complaint, respectively.  MacDonald also alleges all of her § 1983 claims against

the County Defendants in both their personal and official capacities; the official capacity claims amount to claims against the County. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (describing official-capacity suits as "another way of pleading an action against an entity of which an officer is an agent"). County and supervisory liability is available pursuant to § 1983 where an "action pursuant to official municipal policy of some nature caused a constitutional tort." *Ulrich*, 715 F.3d at 1061 (quoting *Bernini v. City of St. Paul*, 665 F.3d 997, 1007 (8th Cir. 2012)). Similarly, official-capacity claims also require proof of a policy or custom resulting in the constitutional violation. *See Kentucky*, 473 U.S. at 166 ("More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation."). For a failure to train or supervise claim against a governmental body to survive a motion to dismiss, MacDonald must plead facts sufficient to show that (1) the County's training practices were inadequate, (2) the governmental body was "deliberately indifferent to the rights of others in adopting these training practices," and (3) the County's alleged training deficiencies caused her constitutional deprivation. *Ulrich*, 715 F.3d at 1061.

Here, as in *Ulrich*, MacDonald has failed to identify any particular custom or policy that lead to any alleged constitutional deprivation. *See id.* (finding that plaintiff's allegations that the defendant's supervision and training practices were "inadequate" were insufficient to support her claim). MacDonald merely parrots the legal standard, without any additional facts to support her claim. Rather than specifying any particular policy or custom, MacDonald alleges generally that the County "created and maintained

. . . customs, policies and/or practices for failing to adequately train . . . regarding obtaining probable cause to ensure that civilians not be falsely arrested." (Compl. ¶ 234.) Similarly, instead of providing any specific allegations showing that the County knew of training deficiencies leading to constitutional violations, MacDonald alleges only that the County Defendants "had actual or constructive notice of their failures to train, supervise and discipline . . . [because] it was foreseeable that their officers would confront situations requiring knowledge of probable cause . . . and that without the necessary training, supervision and discipline, constitutional violations would result." (*Id.* ¶ 235.) Finally, she alleges that the defendants "together established policies and customs which allow even the most brazenly brutal sheriffs to believe they can use excessive force and torture with impunity." (*Id.* ¶ 248.)  Without any allegations of specific policies or practices of the County or specific incidents suggesting a failure to train leading to constitutional violations, the Court finds that MacDonald's conclusory allegations are insufficient to maintain her claim and do not raise the probability of relief beyond a speculative level.  Accordingly, the Court will dismiss MacDonald's supervisory and *Monell* claims as well as all claims alleged against the County Defendants in their official capacities.

## IX.   REMAINING STATE LAW CLAIMS

### A.   Negligence and Negligent Infliction of Emotional Distress

MacDonald alleges a negligence claim in Count 13 and a negligent infliction of emotional distress ("NIED") claim in Count 18.  Under Minnesota law, "[c]ommon law official immunity generally applies to prevent a public official charged by law with duties

which call for the exercise of his [or her] judgment or discretion from being held personally liable to an individual for damages." *Ulrich*, 715 F.3d at 1062 (citing *Schroeder v. St. Louis Cty.*, 708 N.W.2d 497, 505 (Minn. 2006)). Official immunity applies to discretionary functions unless "they are undertaken willfully or with malice." *Id.* Malice means "intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right." *Rico v. State*, 472 N.W.2d 100, 107 (Minn. 1991).

The Court finds that MacDonald's negligence and NIED claims are barred by official immunity. Courts have found that "officers are protected from negligence claims when making discretionary decisions in their" employment because "[n]egligence, by its very nature, lacks the foresight necessary for a willful or malicious act." *Magnan v. Doe*, No. 11-753, 2012 WL 5247325, at *14 (D. Minn. July 6, 2012); *see also Sang v. City of St. Paul*, No. 09-455, 2010 WL 2346600, at *8 (D. Minn. June 8, 2010) (finding negligence action barred by official immunity). The Court will therefore dismiss MacDonald's negligence and NIED claims based on official immunity.

### B.    Intentional Infliction of Emotional Distress

MacDonald alleges an intentional infliction of emotional distress ("IIED") claim in Count 17. Under Minnesota law an IIED claim requires: (1) extreme and outrageous conduct, (2) that is intentional or reckless, (3) causing emotional distress, and (4) the emotional distress is severe. *Hubbard v. United Press Int'l, Inc.,* 330 N.W.2d 428, 438-39 (Minn. 1983). IIED claims are "sharply limited to cases involving particularly outrageous facts." *Adewale v. Whalen*, 21 F. Supp. 2d 1006, 1016-17 (D. Minn. 1998)

(internal quotation marks omitted); *see Thomsen v. Ross*, 368 F. Supp. 2d 961, 977 (D. Minn. 2005) (finding conduct not sufficiently extreme and outrageous where defendants strip searched plaintiff while he was unconscious, waited 48 hours to provide medical treatment for a swollen hand, failed to give him pain medication, and wrongly opened his mail); *Langeslag v. KYMN INC.*, 664 N.W.2d 860, 865 (Minn. 2003) ("Liability for [IIED] does not extend to 'insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" (quoting Restatement (Second) of Torts § 46 cmt. d (1965))).  Here, accepting MacDonald's allegations described above as true, they do not rise to the level of extreme and outrageous conduct necessary for an IIED claim because they are not "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Hubbard*, 330 N.W.2d at 439.

Even if MacDonald's allegations involved extreme and outrageous conduct, she has not pled sufficiently severe emotional distress.  Courts also apply a high bar for the severe emotional distress prong.  *Id.* (finding that an IIED claim survives "only where the distress inflicted is so severe that no reasonable man could be expected to endure it" (quoting Restatement (Second) of Torts § 46 comment j (1965))).  Minnesota courts have rejected IIED claims with evidence of distress that was at least as severe, if not more severe, than MacDonald's alleged distress.  *See, e.g.*, *Besett v. Wadena Cty.*, No. 10-934, 2010 WL 5439720, at *17 (D. Minn. Dec. 7, 2010) (finding "reoccurring headaches, night sweats, insomnia, illness and physical pain" were insufficient to support an IIED claim and collecting other cases with similar holdings).  Thus, MacDonald's allegations of stress, weight loss, anxiety, depression, and insomnia, (Compl. ¶ 194), are

insufficiently severe to state a claim.  Accordingly, the Court will dismiss MacDonald's IIED claim.

### C.     Theft / Unlawful Taking

The County Defendants do not move to dismiss MacDonald's state theft or unlawful taking claim found in Count 21; instead, they argue only that because all other claims fail, the Court should decline to exercise supplemental jurisdiction over this claim. However, because two federal claims remain and the defendants did not make any additional arguments, MacDonald's theft and unlawful taking claim will remain.

### D.     Respondeat Superior

In Count 20, MacDonald alleges that the County is liable for the actions of its employees under the doctrine of respondeat superior.  However, respondeat superior only imposes vicarious liability where an actor is personally liable for a tort.  *Leaon v. Washington Cty.*, 397 N.W.2d 867, 874 (Minn. 1986).  Additionally, the County is protected by vicarious official immunity for state law claims to which its employees enjoy official immunity.  *See Gilmore v. City of Minneapolis*, No. 13-1019, 2015 WL 1189832, at *19 (D. Minn. Mar. 16, 2015) (citing *Schroeder v. St. Louis Cty.*, 708 N.W.2d 497, 508 (Minn. 2006)).  Thus, the Court will dismiss MacDonald's respondeat superior claim to the extent it is based on the dismissed state tort claims: assault and battery, negligence, false arrest, false imprisonment, NIED, IIED, and malicious prosecution.  However, because MacDonald's theft or unlawful taking claim remains, and also because the extent to which respondeat superior could apply to that claim is unclear

and was not argued by the parties, the Court will not dismiss MacDonald's respondeat superior claim in total.   County Defendants' only argument in favor of dismissing this claim rests on the assumption that none of MacDonald's torts are viable, and that vicarious official immunity extends to the County to the same extent as its employees for those claims.   The County Defendants have thus provided no other reason to dismiss MacDonald's respondeat superior claim to the extent it is premised on the theft or unlawful taking.

### E.    Loss of Consortium

Because only MacDonald's § 1983 conditions-of-confinement claim, her § 1983 Fourth Amendment claim for the search of her camera, and her state theft or unlawful taking claim remain, the Court will dismiss her spouse's loss of consortium claim.   A spouse's claim for loss of consortium is derivative of the injured spouse's claim, and therefore, it fails where the injured spouse's underlying action fails.   *ABC & XYZ v. Archdiocese of St. Paul & Minneapolis*, 513 N.W.2d 482, 487-88 (Minn. Ct. App. 1994). Minnesota case law does not support a loss of consortium claim absent "direct physical injury to the spouse in the underlying tort claim."   *Kohler v. Fletcher*, 442 N.W.2d 169, 173 (Minn. Ct. App. 1989).   MacDonald's § 1983 claims do not support a loss of consortium claim.   *See Helleloid v. Indep. Sch. Dist., No. 361*, 149 F. Supp. 2d 863, 877 (D. Minn. 2001) ("Section 1983 does not go so far as to envelope such derivative claims.")   The only remaining potential underlying tort in this action is MacDonald's theft or unlawful taking claim.   Even if this claim could support a loss of consortium claim, *cf. Kaplan v. Mayo Clinic*, 947 F. Supp. 2d 1001, 1011-12 (D. Minn. 2013)

(finding no loss of consortium claim derivative to breach of contract claim), MacDonald alleges no physical injury and her alleged emotional injury derives from other actions, not the taking of her necklace and camera.  Accordingly, the Court will dismiss MacDonald's loss of consortium claim.

## X.    DEFENDANT FLUEGEL

MacDonald alleges nine claims against Fluegel including the following federal claims: catch-all constitutional violations found in Count 1; conspiracy claims under §§ 1983, 1985(3), and 1985(2), found in Counts 4, 8, and 9, respectively; and a Fourth Amendment § 1983 claim for malicious prosecution in Count 11.  MacDonald also alleges the following state law claims: negligence in Count 13; IIED in Count 17; NIED in Count 18; and malicious prosecution in Count 19.

All of these claims relate to Fluegel's conduct while acting as a prosecutor for Dakota County.  Prosecutors are entitled to absolute immunity when performing "prosecutorial functions such as the initiation and pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is intimately associated with the judicial process."  *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996).  "In contrast, a prosecutor is entitled only to qualified immunity when performing actions in an 'investigatory' or 'administrative' capacity."  *Anderson v. Larson*, 327 F.3d 762, 768 (8th Cir. 2003) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976)).  To determine which type of immunity applies, the Court considers "the nature of the function performed, not the identity of the actor who performed it."  *Id.* (citing *Forrester v. White*, 484 U.S. 219, 229 (1987)).

MacDonald argues that Fluegel is a private actor not entitled to any governmental immunity.[15]   However, immunity extends to private individuals "acting on behalf of the government" as well.   *See Filarsky v. Delia*, 132 S. Ct. 1657, 1665-68 (2012) (finding that an attorney retained by a city to assist in an investigation into a firefighter's potential wrongdoing was entitled to seek qualified immunity); *Kariniemi v. City of Rockford*, 863 N.W.2d 430, 434-35 (Minn. Ct. App. 2015) (finding that a contractor retained by a city to function as a city engineer enjoyed official immunity for discretionary acts as a city engineer).   Thus, Fluegel is entitled to absolute immunity for claims related to his prosecution of MacDonald.

Here, the only factual allegations against Fluegel are that he was in contact with the County Defendants while MacDonald was detained, he "would bring a motion to circumvent the release order unless she was booked," he advised County Defendants during the "investigatory period," MacDonald remained in detention on his advice, and he brought a misdemeanor criminal contempt charge against MacDonald.[16]   (Compl. ¶ 91, 131-35, 149.)

---

[15] MacDonald also argues that Fluegel cannot claim immunity for Fluegel Law Firm, PA because it is an entity.  However, there is no reason to treat Fluegel and his law firm differently because MacDonald makes no distinction in her allegations; instead, she refers to them collectively as Fluegel.  (Compl. ¶ 10.)  Accordingly, any liability for Fluegel Law Firm is based on vicarious liability, and an entity cannot be vicariously liable for acts of its agents under § 1983.  *See Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975-76 (8th Cir. 1993) (applying *Monell* to private employer); *see also S.J.S. by L.S. v. Faribault Cty.*, 556 N.W.2d 563, 566 (Minn. Ct. App. 1996) (applying vicarious prosecutorial immunity to a county).

[16] The complaint also references an unrelated prior incident in which Fluegel "relentlessly pursued to verdict a DWI charge against" MacDonald.  (Compl. ¶ 166.)  However, as discussed below, a prosecutor is entitled to absolute immunity for pursuit of criminal prosecution.

Thus, claims related to Fluegel bringing charges or motions are barred by absolute immunity as part of "the imitation and pursuit of a criminal prosecution . . . and other conduct that is intimately associated with the judicial process." *Anderson*, 327 F.3d at 768. Fluegel argues that the additional allegation that he gave advice and counsel to the County Defendants, (*see* Compl. ¶¶ 91, 133-35), is an attempt to circumvent absolute immunity. Courts have "held giving legal advice to police during an investigation strips a prosecutor of absolute immunity for that act because it is not a normal part of prosecutions." *Anderson*, 327 F.3d at 769 (citing *Burns v. Reed*, 500 U.S. 478, 494 (1991)). However, even if absolute immunity does not apply, Fluegel is still entitled to qualified immunity unless his "conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Id.* The only claim that MacDonald ties to Fluegel's advice is her delayed release, which, as discussed above, is not a constitutional violation and does not violate clearly established rights of which a reasonable person would have known. Accordingly, the federal claims against Fluegel fail based on both absolute and qualified immunity.

Additionally, with regard to MacDonald's state law claims, Fluegel is entitled to either absolute immunity, *Brown v. Dayton Hudson Corp.*, 314 N.W.2d 210, 214 (Minn. 1981) (generally adopting federal absolute immunity), or common law official immunity unless he engaged in willful and malicious conduct, *see Kariniemi*, 863 N.W.2d at 434. Accordingly, all state law claims against Fluegel fail. MacDonald's negligence and NIED claims fail due to official immunity as discussed above with the County Defendants. MacDonald's IIED claims fail because she makes insufficient allegations of

extreme and outrageous conduct and severe emotional distress for the reasons stated above with regard to the County Defendants.  Finally, the malicious prosecution claim fails due to absolute immunity because it is based on Fluegel's prosecutorial functions.

For the above-stated reasons, the Court will dismiss all claims against Fluegel.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     The County Defendants' Motion to Dismiss [Docket No. 21] is **GRANTED in part** and **DENIED in part** as follows:

a.     The motion is **DENIED** as to MacDonald's Fourteenth Amendment conditions-of-confinement claim against the County Defendants in their personal capacities.

b.     The motion is **DENIED** as to MacDonald's Fourth Amendment claim based on the search of her camera against County Defendants in their personal capacities.

c.     The motion is **DENIED** as to MacDonald's theft and unlawful taking claim and her respondeat superior claim to the extent that it is based on theft or unlawful taking.

d.     The motion is **GRANTED** in all other respects.  All other claims are **dismissed with prejudice**.

2.     Fluegel and Fluegel Law Firm P.A.'s Motion to Dismiss [Docket No. 34] is

**GRANTED.**   MacDonald's claims against Fluegel and Fluegel Law Firm P.A. are

**dismissed with prejudice**.

3.     MacDonald's Motion to Strike [Docket No. 28] is **DENIED**.


DATED:   March 29, 2016                         _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                              JOHN R. TUNHEIM
                                                              Chief Judge
                                                     United States District Court