UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Michelle MacDonald Shimota, *et al.*, | Case No. 15-cv-1590-JRT-KMM |
| Plaintiffs, | |
| v. | **AFFIDAVIT OF LIEUTENANT BENJAMIN VERBY IN SUPPORT OF COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| Bob Wegner, *et al.*, | |
| Defendants. | |

BENJAMIN VERBY, having first been duly sworn under oath, states as follows:

1. I am employed with defendant Dakota County as the Operations Lieutenant at the Dakota County Jail ("Jail"). I submit this Affidavit in support of the County Defendants' Motion for Summary Judgment.

2. Jail records reflect that plaintiff Michelle MacDonald Shimota (hereinafter, "Ms. MacDonald") arrived at the Jail at approximately 2:46 p.m. on September 12, 2013.

3. The Jail has two negative-pressure rooms. They are located in the Jail's intake area, which is separated from general population housing units. A negative-pressure room is a single-occupant cell with a ventilation system that generates negative pressure to allow air to flow into, but not escape from, the room.

4. Negative-pressure rooms are used to prevent the spread of tuberculosis and other contagious diseases at the Jail. Inmates who refuse to answer medical screening questions during booking, or who indicate during booking that they have or may have been exposed to tuberculosis or another contagious disease, are housed temporarily in a

negative-pressure room until it is determined if they are infectious. Once an inmate has been medically cleared, the inmate is moved out of a negative-pressure room.

5. The Jail's negative-pressure rooms are connected to a central HVAC system that provides ventilation to an entire zone of the Jail. The temperature of the negative-pressure rooms is not individually controlled. Rather, their temperature is set and maintained by a thermostat that controls the entire HVAC system to which they are connected. The thermostat that controls the temperature of the negative-pressure rooms is set at 70 degrees. Jail staff cannot adjust the thermostat; only Dakota County facilities management staff can do so.

6. Jail records reflect that Ms. MacDonald was housed in one of the Jail's negative-pressure rooms, I327, during her confinement at the Jail on September 12 and 13, 2013. Recent temperature readings taken in I327 show that its actual temperature is between 69.4 and 71.0 degrees.

7. Unlike the Jail's general population cells, which have separate overnight light fixtures, each negative-pressure room is lit at all times by a 64-watt light fixture. This lighting is necessary for Jail staff to closely observe and monitor the health and safety of inmates who are kept in isolation to ensure they are not infectious. The lighting enables Jail staff to observe whether a negative-pressure room occupant requires immediate medical attention. Oftentimes, inmates placed in a negative-pressure room fail to answer medical questions because they are under heavy influence of alcohol or illegal drugs and thus are too intoxicated to respond and require frequent observation.

8. The door of I327 has a narrow, vertical window that permits Jail staff to peer into the room to perform occupant well-being checks. It is also equipped with a magnetic curtain which, when affixed to the outside of the window, provides complete privacy to occupants.

9. Jail records contain more than 70 documented observations of Ms. MacDonald during her incarceration on September 12 and 13, 2013. This is consistent with Minnesota Department of Corrections rules regulating the frequency of inmate checks.

10. Inside I327, there is a toilet and a concrete partition wall in front of the toilet that provides occupants privacy when going to the bathroom.

11. Jail records reflect that a booking photograph of Ms. MacDonald was taken at the Jail at 10:55 p.m. on September 12, 2013.

12. Inmates at the Jail are provided bedding once they are booked. This practice furthers the Jail's interest in maintaining an orderly booking process. Housing decisions are made during the booking process based on security classifications and other factors. Inmates are not moved to a housing unit until after the booking process is complete. Bedding is provided to inmates commensurate with their movement to a housing unit.

13. Female inmates are not housed at the Jail on a long-term basis. Upon completing the booking process, female inmates who remain in detention are ultimately transported to the Ramsey County Workhouse, normally within a few days. In the interim, female inmates are housed in the Jail's intake area and provided bedding upon completing the booking process.

14.     Ms. MacDonald did not complete the booking process on September 12 or 13, 2013.

15.     There is a raised concrete bench inside I327. Inmates are permitted to rest on the bench. It also doubles as a bed; inmates may place a mattress on the bench and sleep there.

16.     Inmates are not allowed to crawl underneath Jail-issued mattresses, because doing so hinders staff's ability to perform well-being checks. This rule is especially critical for inmates housed in negative-pressure rooms, who are under even closer observation given potential health concerns.

17.     Similarly, inmates are not allowed to cover themselves in toilet paper, because it impedes Jail staff's ability to observe them. This rule is likewise especially important for inmates in negative-pressure rooms who are under heightened observation.

18.     Inmates are provided phone privileges and a pin number to use to make phone calls during the booking process, after they have provided initial booking information. This rule also furthers the Jail's interest in maintaining an orderly booking process and encourages inmates to cooperate with booking. Jail staff uses information obtained in the booking process to issue victim notifications, and phone numbers associated with victims are blocked so that inmates cannot call those numbers.

19.     Inmates are not allowed to wear nylons at the Jail, because nylons can be used for self-harm and pose a security risk.

20.     Jail records reflect that Ms. MacDonald was transported from the Jail to court at approximately 3:15 p.m. on September 13, 2013, and was brought back to the

4

Jail after court and released from custody at approximately 4:20 p.m. on September 13, 2013. In all, Ms. MacDonald spent fewer than 26 hours at the Jail on September 12 and 13, 2013.

    Further your affiant sayeth not.

_____
Lieutenant Benjamin Verby

Subscribed and sworn to before
this 28th day of February, 2017

_____
Notary Public

> VALERIE M. DOCKTER
> NOTARY PUBLIC - MINNESOTA
> My Commission Expires Jan. 31, 2020