UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| MICHELLE MACDONALD SHIMOTA, | Case No. 15-1590 (JRT/KMM) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' SUMMARY JUDGMENT MOTION** |
| BOB WEGNER, CHRISTOPHER MELTON, TIMOTHY GONDER, JON NAPPER, and DAKOTA COUNTY, | |
| Defendants. | |

Michael B. Padden, **PADDEN & MCCOLLISTER PLLC**, 8673 Eagle Point Boulevard, Lake Elmo, MN  55042, for plaintiff.

Jeffrey A. Timmerman, **DAKOTA COUNTY ATTORNEY'S OFFICE**, 1560 Highway 55, Hastings, MN  55033, for defendants.

On March 25, 2015, plaintiff Michelle MacDonald Shimota ("MacDonald") commenced this action asserting a variety of constitutional and state law claims against numerous defendants stemming from her arrest and detention at the Dakota County Jail (the "Jail") in September 2013.  On May 29, 2016, the Court granted in part defendants' motions to dismiss, leaving three claims remaining against defendants Dakota County, Sergeant Christopher Melton, and Deputies Timothy Gonder, Jon Napper, and Bob Wegner (together "Defendants").

The remaining claims are a Fourteenth Amendment claim relating to the conditions of MacDonald's confinement at the Jail, a Fourth Amendment claim based on the search of MacDonald's digital camera, and a theft or unlawful taking claim based on

the alleged loss of MacDonald's gold cross pendant.  Defendants move for summary judgment on all claims and also move to strike the report and proffered testimony of Richard Lichten, a jail practice liability expert retained by MacDonald.

Based on the undisputed facts, MacDonald's claims fail as a matter of law.  First, the Fourteenth Amendment claim fails because defendants have demonstrated that the conditions of confinement furthered a legitimate government objective.  Second, the Fourth Amendment claim fails on qualified immunity grounds as it was not clearly established that a warrant was required to search MacDonald's camera.  Finally, MacDonald's civil theft claim fails as she has not established that any Defendant seized or possessed the pendant or acted with wrongful intent.  As a result, the Court will grant Defendants' motion for summary judgment and deny as moot Defendants' motion to strike.

## DISCUSSION

### I.   FACTUAL HISTORY[1]

#### A.   Arrest

On the morning of September 12, 2013, MacDonald, an attorney, appeared in a Dakota County Judicial Center courtroom to represent a client in a child custody hearing before Minnesota District Judge David Knutson.  (Aff. of Christopher Melton ("Melton Aff."), Ex. 1 ("Incident Report") at 1, Mar. 2, 2017, Docket No. 95.)  During a short recess, MacDonald photographed Deputy Gonder inside the courtroom on a digital

---

[1] The Court only discusses the facts relevant to the instant motion.

camera.  (Aff. of Jeffrey A. Timmerman ("Timmerman Aff."), Ex. 1 ("MacDonald Dep.") at 33:11-34:21, Mar. 2, 2017, Docket No. 92; *id.*, Ex. 2 ("Gonder Dep.") at 26:3-27:24.)  Deputy Gonder told MacDonald she could not take photographs in the courtroom and then confiscated the camera and gave it to his superior, Sergeant Melton.  (Incident Report at 1.)

Sergeant Melton explained what had occurred to Judge Knutson and requested Judge Knutson's permission to search the camera.  (*Id.* at 1-2; Timmerman Aff., Ex. 3 ("Melton Dep.") at 35:4-12.)  Judge Knutson gave permission, and both Sergeant Melton and Deputy Gonder viewed the contents of MacDonald's camera.  (Melton Dep. at 35:4-36:11; Gonder Dep. at 82:20-83:17.)  After Sergeant Melton observed the photograph MacDonald had taken of Deputy Gonder, he provided MacDonald with a copy of Minn. Gen. R. Prac. 4.01, which prohibits taking pictures in any courtroom except for official court record.  (Incident Report at 2.)  Sergeant Melton then told Judge Knutson that MacDonald was guilty of contempt of court under Minn. Stat. § 588.20 and that she would receive a ticket for the misdemeanor offense.  (*Id.* at 2.)

During a court recess that morning, Sergeant Melton approached MacDonald and asked her to accompany him so that he could issue her a ticket.  (Melton Dep. at 16:5-12.)  Because MacDonald declined to come with him, he told her that she was under arrest.  (*Id.* at 16:5-12, 26:18-23.)  Sergeant Melton and Deputy Gonder then escorted MacDonald to a "bailiff station holding area."  (Gonder Dep. 12:4-9.)  Sergeant Melton explained to MacDonald "at least fifteen times that she would be released once she gave

[him] her full name, date of birth, and address," but she refused to cooperate. (Incident Report at 3.)

### B. Initial Detention & Return to Court

At the bailiff station, MacDonald surrendered her personal property, (Gonder Dep. at 79:7-18, 83:18-23; Timmerman Aff., Ex. 5 ("Napper Dep.") at 20:6-9), and Deputy Napper photographed and inventoried it, (Aff. of Jon Napper ("Napper Aff.") ¶ 2 & Ex. 1, Mar. 2, 2017, Docket No. 97). A Dakota County official then handcuffed and placed MacDonald in a holding cell. (MacDonald Dep. 59:9-16.)

Shortly thereafter, the courtroom clerk requested that MacDonald return to the courtroom to continue the child custody trial. (Incident Report at 3.) When court resumed, Sergeant Melton reiterated that MacDonald would be issued a citation and released as soon as she provided her full legal name, address, and date of birth. (*Id.*) She still did not provide the information. (*Id.*) Thus, when court concluded, Sergeant Melton transported MacDonald to the jail to be booked for contempt of court and obstructing legal process. (*Id.*)

### C. Overnight Detention

At the Jail, MacDonald did not respond to booking or medical screening questions. (MacDonald Dep. at 140:5-141:18.) As a result, Jail staff placed her in one of the Jail's negative-pressure rooms, (Aff. of Farrel Byrd ("Byrd Aff.") ¶¶ 2-5, Mar. 2, 2017, Docket No. 94), which is a "single-occupant cell with a ventilation system that generates negative pressure to allow air to flow into, but not escape from, the room," (Aff. of

Benjamin Verby ("Verby Aff.") ¶ 3, Mar. 2, 2017, Docket No. 93). The following day, MacDonald was released from custody around 4:20 p.m., (MacDonald Dep. at 105:10-20), and in total, spent less than 26 hours in the Jail, (Verby Aff. ¶ 20).

## II. PROCEDURAL BACKGROUND

MacDonald filed this action on March 25, 2015, against Dakota County, individual employees of Dakota County, and former Dakota County prosecutor Daniel Fluegel and his law firm, Fluegel Law Firm P.A. (Compl., Mar. 25, 2015, Docket No. 1; *see also* Am. Compl., May 5, 2015, Docket No. 20.) MacDonald brought twenty-two claims, alleging violations of her rights under the First, Fourth, and Fourteenth Amendments; corresponding state tort causes of action; and various state law claims. (Am. Compl. ¶¶ 223-358.)

On March 29, 2016, the Court decided the Defendants' motions to dismiss and dismissed nearly all of MacDonald's claims. *Shimota v. Wegner*, No. 15-1590, 2016 WL 1254240 (D. Minn. Mar. 29, 2016). Of note, the Court granted the Defendants' motion to dismiss MacDonald's false arrest, false imprisonment, malicious prosecution, and retaliatory prosecution claims because the officers had "at least arguable probable cause" to arrest MacDonald for taking a photograph of Deputy Gonder in the courtroom. *Id.* at *5-6.[2]

---

[2] The Court also dismissed MacDonald's excessive force claim and state assault and battery claims, which related to her removal from the courtroom, removal of her personal effects, and placement in a wheelchair. *Wegner*, 2016 WL 1254240, at *7-8. Additionally, the Court

(Footnote continued on next page.)

The Court, however, allowed four claims to remain. First, the Court found that, accepting MacDonald's factual allegations were true (as the Court must at the motion-to-dismiss stage), the Jail's confinement conditions may have risen to the level of a Fourteenth Amendment violation; but the Court noted Defendants could later provide evidence challenging those allegations or establishing legitimate governmental objectives. *Id.* at *9-10. Second, the Court rejected Defendants' arguments that MacDonald's Fourth Amendment claim based on the search of her camera failed because MacDonald lacked actual damages, there were exigent circumstances, or MacDonald lacked reasonable expectation of privacy in her camera. *Id.* at *6-7. But the Court noted that, because Defendants had arguable probable cause for the arrest, "at most, MacDonald has alleged a separate claim solely for search of her camera for nominal damages." *Id.* at *7 n.10. Lastly, the Court allowed MacDonald's theft and unlawful taking claim based on the loss of her pendant to remain because Defendants did not move to dismiss that claim on its merits. *Id.* at *12.

On March 2, 2017, Defendants moved for summary judgment on all remaining claims, (Defs.' Mot. for Summ. J., March 2, 2017, Docket No. 89), and also moved to exclude the report and proffered testimony of Richard Lichten, a jail practice liability

---

(Footnote continued.)

dismissed MacDonald's equal protection claim, *id.* at *9; her federal conspiracy claims, *id.* at *10; her *Monell* claim, *id.* at *11; her state-law claims of negligent and intentional inflictions of emotional distress, *id* at *12; and Plaintiff Thomas G. Shimota's loss of consortium claim, *id.* at *13.

expert retained by MacDonald, (Defs.' Mot. to Exclude Expert Test., Mar. 2, 2017, Docket No. 99).

## DISCUSSION

### I.   STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the lawsuit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "To defeat a motion for summary judgment, a party may not rest upon allegations, but must produce probative evidence sufficient to demonstrate a genuine issue [of material fact] for trial." *Davenport v. Univ. of Ark. Bd. of Trs.*, 553 F.3d 1110, 1113 (8th Cir. 2009). Furthermore, if the non-movant's version of events "is blatantly contradicted by the record, so that no reasonable

jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## II.     FOURTEENTH AMENDMENT – CONDITIONS OF CONFINEMENT

Defendants first seek summary judgment on MacDonald's individual-capacity claim that the conditions of confinement at the Jail violated her Fourteenth Amendment rights.  In response to Defendants' motion, MacDonald states generally that her experience at the Jail is "detailed throughout Plaintiff's [attached] deposition."  (Pl.'s Mem. in Opp'n at 3, Mar. 23, 2017, Docket No. 105.)  MacDonald fails to cite to any specific record evidence, and the only factual assertions she makes are that "she was denied toilet paper, a mattress, and pillow in her cell." (*Id.*)  Merely inviting the Court to pore through her entire deposition does **not** satisfy MacDonald's obligation under Fed. R. Civ. P. 56 to designate specific facts demonstrating a genuine controversy.  *See Crossley v. Ga.-Pac. Corp.*, 355 F.3d 1112, 1114 (8th Cir. 2004).

Defendants do not dispute that MacDonald's toilet paper and mattress were removed from her cell and a pillow was not provided to her; instead, they argue that those conditions did not violate her Fourteenth Amendment rights because they furthered legitimate government objectives.  Because MacDonald raised these three conditions and Defendants do not dispute them, the Court will consider these facts as the basis for MacDonald's conditions-of-confinement claim even though she fails to provide proper record citations; however, the Court will not address any of MacDonald's other allegations regarding her conditions of confinement made in her amended complaint

because she did not raise them with specific record citations or legal argument in response to Defendants' motion.[3]

The Court analyzes a pretrial detainee's claims of conditions of confinement under the due process clause of the Fourteenth Amendment. *Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010) (discussing *Bell v. Wolfish*, 441 U.S. 520 (1999)); *Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003). "The standard applicable to conditions of confinement claims by pretrial detainees was enunciated in *Bell v. Wolfish*, 441 U.S. 520, (1979)." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996). The Supreme Court in *Bell* held that "[a]bsent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on" whether "a particular condition or restriction of pretrial detention is reasonably related to a legitimate

---

[3] MacDonald previously alleged the following conditions of confinement: she was held in a "near-freezing" cell; there were bright lights throughout the night; she did not have a blanket and the guards taunted her with a blanket; there was an opening in her cell that allowed the male guards to watch her if she went to the bathroom; the guards interrupted her throughout the night making her fearful; and the guards told her that someone else had committed suicide and that they saw a dead body. (Am. Compl. ¶¶ 101, 108-110, 113-14, 116, 119, 121-22.) In addition to failing to cite to the record to support any of these allegations, (Pl.'s Mem. in Opp'n at 3-4), and improperly arguing that the Jail staff "breached a professional standard of care," (*id.*), many of these assertions also fail because Defendants offered undisputed evidence that contradict some of the claims and provided legitimate reasons justifying other conditions. Specifically, MacDonald does nothing to challenge Defendants' evidence showing that: the thermostat which controlled her cell was "set at 70 degrees" and that the Jail staff could not adjust the thermostat, (Verby Aff. ¶¶ 5-6); that she was confined in a negative-pressure room purely out of concern for her safety because she would not answer medical screening questions, (Byrd Aff. ¶¶ 2-5; Verby Aff. ¶ 4); that the cell was continually illuminated by a light fixture for jail staff to observe whether its occupants required medical attention, (Verby Aff. ¶ 7); that the cell had a concrete partition wall in front of the toilet to provide her with privacy when going to the bathroom, (*id.* ¶ 10); and that she was not allowed to make a telephone call because she prevented the Jail staff from performing an orderly booking process, (*id.* ¶¶ 12, 18). (*See* Pl.'s Mem. in Opp'n at 3-4).

governmental objective." 441 U.S. at 538-39. "Not every disability imposed during pretrial detention amounts to 'punishment'" as "[l]oss of freedom of choice and privacy are inherent incidents of confinement in such a facility." *Id.* at 537.

As MacDonald does not assert or provide any evidence that the Jail staff expressed intent to punish her, the Court must determine whether MacDonald's lack of a mattress, toilet paper, and bedding were reasonably related to legitimate governmental objectives. MacDonald does nothing to challenge the record evidence suggesting that Jail staff removed her cell mattress because she "crawled underneath it" and removed her toilet paper because she "used it to wrap herself from head-to-toe, like a mummy." (Aff. of Timothy Gonder ("Gonder Aff.") ¶¶ 2-4, Mar. 2, 2017, Docket No. 96.) The Court notes that MacDonald's behavior hindered the Jail from observing her well-being, which was especially important because MacDonald did not answer medical screening questions. (Verby Aff. ¶¶ 16-17). Because removing MacDonald's mattress and toilet paper served a legitimate purpose, the Court finds no Fourteenth Amendment violation based on those actions. *See Williams v. Delo*, 49 F.3d 442, 445-46 (8th Cir. 1995) (noting "the legitimate penological goals of preventing injury to the inmate, injury to corrections officials, and damage to the facility"); *Robinson v. Adams*, No. 10-0013, 2010 WL 4942163, at *5 (E.D. Ark. Nov. 9, 2010) (granting summary judgment where plaintiff "refuse[d] to acknowledge" that his own actions resulted in removal of mattress and other items), *adopted by* 2010 WL 4942159 (E.D. Ark. Nov. 30, 2010).

MacDonald also does not dispute that she chose not to answer booking questions, (MacDonald Dep. at 140:5-141:18), and she does not challenge Defendants' evidence

suggesting this was the reason that the Jail staff did not provide her with bedding. (Verby Aff. ¶¶ 12, 18.) The Court finds that this is not a Fourteenth Amendment violation because it furthered the Jail's legitimate objective of maintaining an orderly booking process. *Kordecki v. Nobles*, No. 93-1087, 1993 WL 533308, at *1 (7th Cir. Dec. 22, 1993) (holding pretrial detainee's placement in isolation based on refusal to cooperate with booking procedures was not arbitrary); *Crace v. Efaw*, No. 09-551, 2012 WL 3962799, at *8 (S.D. Ohio Sept. 10, 2012) (detention facilities have a "legitimate governmental interest in maintaining an orderly booking process").

Thus, because MacDonald fails to provide record evidence calling into question Defendants' asserted legitimate reasons for MacDonald's confinement conditions, the Court will grant the Defendants' summary judgment motion on the Fourteenth Amendment claim.

### III. FOURTH AMENDMENT – SEARCH OF CAMERA

Previously, the Court denied Defendants' motion to dismiss MacDonald's Fourth Amendment claim based on the search of her camera against County Defendants in their personal capacities. *Wegner*, 2016 WL 1254240, at *7, 15. Here, MacDonald does not dispute that Sergeant Melton and Deputy Gonder were the only Defendants who viewed the contents of her camera, (Melton Dep. at 35:4-36:11; Gonder Dep. at 82:20-83:17),

and thus they are the only Defendants implicated by the individual-capacity claim for the alleged Fourth Amendment violation.[4]

Defendants argue that Sergeant Melton and Deputy Gonder are entitled to qualified immunity because it was not clearly established that a warrant was required to search MacDonald's camera when the search occurred in September 2013. "On summary judgment, government officials possess qualified immunity unless (1) the facts plaintiff has shown amount to a violation of a constitutional right, and (2) the right violated was clearly established when the alleged misconduct occurred." *Williams v. Herron*, 687 F.3d 971, 974 (8th Cir. 2012). "A court may begin its analysis with either prong." *Id.*

The Court first notes that the Eighth Circuit has not addressed whether a warrant is needed to search a digital camera when the search is incident to an arrest. *See United States v. Stringer*, 739 F.3d 391, 396 (8th Cir. 2014) (declining to address constitutionality of warrantless search of arrestee's cell phone and digital camera). Moreover, other courts have held that it was not clearly established around the time of the search (September 2013) that a warrant was required to search a camera incident to arrest. *Schlossberg v. Solesbee*, 844 F. Supp. 2d 1165, 1171 (D. Or. 2012) (noting "that the law was not settled regarding whether [the defendant] could search [a] camera as incidental to a valid

---

[4] To the extent MacDonald still seeks to pursue this claim against Deputies Napper and Wegner, (*see* Am. Compl. ¶¶ 224, 225(C)), it fails because there is no evidence that they were personally involved in the search or seizure of MacDonald's camera. *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006), ("[A plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his [or her ]constitutional rights.").

arrest"); *Hartman v. Walker*, No. 13-355, 2015 WL 5470261, at *27 (E.D. Tex. Sept. 16, 2015) (holding not clearly established in May 2013 that a warrant was required to search plaintiff's pen camera following arrest); *Am. News & Info. Servs., Inc. v. Gore*, No. 12-2186, 2014 WL 4681936, at *9-10 (S.D. Cal. Sept. 18, 2014) (holding not clearly established in 2012 that a warrant was required to search plaintiff's video camera at the time of arrest).

Additionally, Sergeant Melton only searched MacDonald's camera after he received Judge Knutson's permission, which "show[s] the reasonableness of the action taken." *E-Z Mart Stores, Inc. v. Kirksey*, 885 F.2d 476, 478 (8th Cir. 1989); *see also Fitzgerald v. Bd. of Cty. Comm'rs*, No. 07-101, 2010 WL 1410979, at *9 (W.D. Okla. Apr. 2, 2010) (finding officers who acted in reliance on advice of judge were entitled to qualified immunity on unlawful entry claim).

As it was not clearly established in September 2013 that a warrant was required to search MacDonald's camera incident to her arrest, the Court will grant Defendants' summary judgment motion on MacDonald's Fourth Amendment claim based on qualified immunity.

## IV.   THEFT AND UNLAWFUL TAKING

Lastly, MacDonald asserts a "theft/unlawful taking claim" against the individual defendants and seeks to hold Dakota County vicariously liable. (Am. Compl. ¶¶ 354-56.) As MacDonald has not provided what applicable law governs such a claim, (*id.*; *see also*

Pl.'s Mem. in Opp'n at 5), the Court will construe this claim as a civil theft claim under Minn. Stat. § 604.14.

The statute provides that "[a] person who steals personal property from another is civilly liable to the owner of the property for its value when stolen plus punitive damages of either $50 or up to 100 percent of its value when stolen, whichever is greater." Minn. Stat. § 604.14, subd. 1. Although the statute does not define the term "steals," the Minnesota Court of Appeals has stated the term "generally means that a person wrongfully and surreptitiously takes another person's property for the purpose of keeping it or using it." *TCI Bus. Capital, Inc. v. Five Star Am. Die Casting, LLC*, 890 N.W.2d 423, 431 (Minn. Ct. App. 2017) (discussing Minn. Stat. § 604.14). Thus, a civil theft claim requires that a defendant wrongfully intend to "keep" or "use" the personal property at issue. *Id.*

At the bailiff station, MacDonald was required to surrender her personal property because she was under arrest and in custody. (Gonder Dep. at 79:7-18, 83:18-23; Napper Dep. at 20:6-9.) MacDonald claims she was wearing a gold cross pendant on her necklace chain and that the pendant was misplaced during the inventory process. (MacDonald Dep. at 67:14-22, 73:12-24.) MacDonald does not dispute that Deputy Napper photographed and inventoried her personal property and that there is no gold cross pendant in the photograph. (Napper Aff. ¶ 2 & Ex. 1.) Deputy Napper does not recall seeing a pendant that day and states that had MacDonald been wearing one, it would have been inventoried. (Napper Dep. at 43:7-44:15, Napper Aff. ¶ 3.) All of the remaining individual defendants say that they never possessed her pendant, let alone lost

or stole it.  (Melton Aff. ¶ 3; Gonder Aff. ¶ 5; Aff. of Robert Wegner ¶ 2, Mar. 2, 2017, Docket No. 98.)  MacDonald only argues that "she had a gold cross pendant when she was taken into custody, and it was never returned.  This is obviously a matter for the fact finder."  (Pl.'s Mem. in Opp'n at 5.)

However, MacDonald has not offered any evidence that anyone took her pendant with the intent to use or keep it.  In fact, she does not even know who allegedly lost or stole her pendant.[5]  Thus, based on the undisputed evidence, MacDonald has not established that any of the individual defendants seized or possessed the pendant or acted with wrongful intent to support a civil theft claim.  *See TCI Bus. Capital*, 890 N.W.2d at 431 (affirming summary judgment on claim in the absence of evidence that defendant took plaintiff's property with "intent to use it or keep it"); *Rachuy v. Pauly*, Nos. A13-0393, A13-0394, 2014 WL 103388, at *3 (Minn. Ct. App. Jan. 13, 2014) (affirming summary judgment in the absence of evidence that defendant possessed allegedly stolen property).

Because MacDonald's theft claim against any individual Defendant fails as a matter of law, it necessarily follows that Dakota County cannot be held vicariously liable.  Minn. Stat. § 466.02 provides in relevant part that Dakota County is subject to liability for torts "of its officers, employees and agents acting within the scope of their employment or duties."  For vicarious liability to apply under § 466.02, "there must be, first, an actor personally liable for the tort, and, second, the actor must be within the

---

[5] She also acknowledges that the necklace chain, which she claims the pendant was on, was returned to her upon her release.  (MacDonald Dep. at 67:14-17.)

scope of the employment by the employer." *Leaon v. Washington County*, 397 N.W.2d 867, 874 (Minn. 1986). Here, MacDonald failed to establish that any individual Defendant is personally liable for the alleged theft.

Thus, as MacDonald failed to identify who stole her pendant and that any Defendant had the wrongful intent to take or use the pendant, the Court will grant Defendants' summary judgment motion on MacDonald's unlawful taking and theft claim.

Finally, because the Court will grant Defendants' summary judgment on all of MacDonald's claims, the Court will deny as moot Defendants' motion to exclude Lichten's testimony.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment [Docket No. 89] is **GRANTED**.

2. Defendants' Motion to Exclude Expert Testimony of Richard Lichten [Docket No. 99] is **DENIED as moot**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  September 14, 2017   　　　_____s/John R. Tunheim_____
at Minneapolis, Minnesota.   　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　Chief Judge
　　　　　　　　　　　　　　　United States District Court